UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL J. DETLAFF,

        Plaintiff,

  v.

CARI BOSS, JULIA KRAUSE,
BETHANY SALAMONE, ERIC L. LOSEE,
and JAMES DARLING,

        Defendants.

Case No. 18-cv-1620-pp

---

**ORDER GRANTING DEFENDANTS' MOTION TO CLARIFY (DKT. NO. 32), SCREENING AMENDED COMPLAINT, DISMISSING DEFENDANTS AND REQURING PARTIES TO SUBMIT AN UPDATED RULE 26(f) REPORT**

---

The plaintiff, who doesn't have a lawyer representing him, filed a civil rights complaint "alleging violations of the First, Eighth and Fourteenth Amendments of the United States Constitution, violations of Due Process of Law, obstruction to the Courts, as well as State charges for false imprisonment and misconduct and violations of Wisconsin Administrative Code." Dkt. No. 1 at 1. Magistrate Judge William E. Duffin screened the complaint. Dkt. No. 3. He provided a detailed analysis of the plaintiff's access-to-courts claim, and concluded that the plaintiff had not stated any injury or prejudice he'd suffered as a result of the alleged denial of access. Id. at 4-7. He recommended that this court dismiss the access-to-court claim, but he gave the plaintiff the opportunity to amend the complaint in case the plaintiff could remedy the problem "with more specific details." Id. at 7. As to the plaintiff's due process

1

and Eighth Amendment claims, Judge Duffin didn't analyze the substance of those claims. In regard to the due process claim (that the plaintiff's fifty-three day incarceration resulted from a denial of due process), Judge Duffin found that it "very well may be barred under the statute of limitations." Id. He also observed that the due process claim could be barred under Heck v. Humphrey, 512 U.S. 477 (1994). Id. at 8. He did not address the Eighth Amendment claim.

Judge Duffin required the plaintiff to file an amended complaint (if he chose to do so) within fourteen days of the date of his order. Id. The clerk's office then referred the case to this court to consider whether to adopt Judge Duffin's recommendation; while the case was pending before this court, the plaintiff asked for additional time to file his amended complaint. Dkt. No. 6. This court granted that motion and ordered the plaintiff to file the amended complaint by the end of the day on November 15, 2018. Dkt. No. 7. It then issued an order adopting Judge Duffin's recommendation to dismiss the access-to-courts claim. Dkt. No. 8 at 4. This court did not discuss Judge Duffin's speculation that the plaintiff's due process claim might be time-barred, or the fact that he did not address the Eighth Amendment claim; it ruled only on the recommendation that it dismiss the access-to-courts claim. This court then returned the case to Judge Duffin for further proceedings. Id. The plaintiff did not file an amended complaint by November 15, 2018, as this court had ordered.

On December 18, 2018, the Clerk of Court reassigned the case to this court after the parties filed their magistrate judge consent forms. The

defendants answered the original complaint, dkt. no. 20, the plaintiff filed a motion for writ of mandamus (really a motion to compel production of redacted information), dkt. no. 22, and the defendants filed a motion for judgment on the pleadings, dkt. no. 24. The court conducted a scheduling conference on April 17, 2019, at which it denied the plaintiff's motion for a writ of mandamus, denied without prejudice the defendants' motion for judgment on the pleadings, granted the plaintiff's motion to file an amended complaint and suspended all other deadlines. Dkt. No. 30. The court ordered the plaintiff to file the amended complaint by June 7, 2019. Id. at 2. The plaintiff filed his amended complaint on June 7, 2019.[1] Dkt. No. 31.

On June 19, 2019, the defendants filed this motion for clarification. Dkt. No. 32 at 1. They reminded the court that at the April 17 hearing, defense counsel had asked the court whether the court planned to screen the plaintiff's amended complaint. Id. at 1. The court had responded that it would look at the amended complaint when it came in, and it would let the defendants know whether they needed to answer. Id. The defendants were concerned that under Fed. R. Civ. P. 15(a)(3), they were required to answer or otherwise respond to the amended complaint by June 21, 2019 unless the court ordered otherwise, and the court had not yet ordered otherwise. Id. They also pointed out that because the plaintiff had added new defendants, new facts and new legal

---

[1] The plaintiff titled this pleading "Plaintiff's Second Amended Complaint," although he'd never filed a *first* amended complaint.

3

theories, it was their view that screening was required. Id. at 1-2. They asked the court to explain whether it planned to screen or not. Id. at 2.

The court received this motion two days before the defendants' answer was due, and for many reasons (most related to its case load and trial schedule), the court did not respond to the motion before the June 21, 2019 answer deadline. Accordingly, on June 21, 2019, the defendants answered the amended complaint. Dkt. No. 33. Since then, the case has been stalled, again due primarily to the court's caseload.

Although the defendants have answered the amended complaint, the court suspects they may be considering whether to renew their motion for judgment on the pleadings. As the defendants indicated in their motion for clarification, 28 U.S.C. §1915(e)(2)(B) provides that in cases where the plaintiff has asked to proceed without prepaying the filing fee, the court "shall dismiss the case at any time" if it determines that the claims are frivolous or malicious, or if they fail to state a claim for which a federal court may grant relief. Although the statute does not necessarily require the court to make such a determination *sua sponte*, particularly in cases where the defendants have appeared and answered, the court reviews the amended complaint in an abundance of caution.

In what he captioned his "second" amended complaint, the plaintiff lists two causes of action. Dkt. No. 31 at 11-12. He alleges that defendants Boss, Salamone-King, Krause and Losee violated his due process rights by falsifying state and Department of Corrections documents to "fraudulently incarcerate"

4

him. Id. at 11. He also alleges that defendants Darling (a new defendant, not named in the original complaint), Krause and Losee falsified documents to fraudulently incarcerate him, resulting in his receiving the most extreme reincarceration sentence in violation of the Eighth Amendment. Id. at 1-2. These allegations are similar to those in the original complaint, on which Judge Duffin allowed the plaintiff to proceed. The significant differences between the original and the amended complaint are the plaintiff's inclusion of additional facts regarding his argument that the doctrine of "continuing violation"[2] delayed the accrual date of his injuries such that his claims are not barred by the statute of limitations[3] and the addition of defendant Darling.

      The amended complaint is fourteen pages long, single spaced. It is not the "short and plain statement of the claim" required by Fed. R. Civ. P. 8(a). It alleges that in 2008, the plaintiff was sentenced to a term of probation; he says that defendant Boss was his supervising agent, that Krause was Boss's superviser, and that Losee was the regional chief of the DOC. Dkt. No. 31 at ¶¶8-9. He describes a rather complicated series of events in which he says his on-again, off-again live-in girlfriend took advantage of his emotional condition to pressure him into signing his home over to her. Id. at ¶¶9-20. He asserts

---

[2] See, e.g., Heard v. Sheahan, 253 F.3d 316 at 318-20 (7th Cir. 2001).

[3] The events that gave rise to the allegations in the complaint appear to have occurred between 2007 and October 8, 2012 and the plaintiff filed his original complaint on October 12, 2018 (dkt. no. 1)). The defendants argued in their motion for judgment on the pleadings that the plaintiff filed his complaint after the six-year limitations period in effect at the time had expired. Dkt. No. 25.

that after the girlfriend procured his home, the girlfriend tried to get him locked up so that he couldn't sue her to regain title. Id. at ¶¶21-23.

Once the plaintiff was released from the sentences he'd received as a result of her alleged manipulation, the plaintiff contends that his girlfriend "realized that she could use manipulations on his probation agent, Defendant Boss, and by false accusations seek [the plaintiff's] incarceration." Id. at ¶24. The plaintiff alleges that Boss encouraged the girlfriend to file a restraining order against the plaintiff "solely in order to prevent Plaintiff from protecting his property interest during the same period of the alleged false imprisonment," and that as a result of allegations by the girlfriend, Boss "incarcerated Plaintiff" on a probation violation. Id. at ¶¶26-27. He alleges that Boss and the girlfriend met and talked on the phone several times prior to his arrest. Id. at ¶29.

The plaintiff ended up being incarcerated, and he says that even though Boss "had been officially terminated as having lost any jurisdictional control over Plaintiff and his legal affairs due to imprisonment," she "kept tabs" on the plaintiff during his incarceration. Id. at ¶¶34-36. Basically, the plaintiff alleges that Boss continued to "meddle" into his life even after he was in prison, including "meddling" in his relationship with his daughter and staying in close personal contact with the girlfriend. Id. at ¶¶37-40. The plaintiff says he complained about this to Boss's supervisors, Krause and Losee, "who were complicit to the allegations of malfeasance and misconduct." Id. at ¶42.

Jumping ahead to 2012, the plaintiff says that he "was to be released" from custody on August 7, 2012, under the supervision of defendant Bethany

6

Salamone-King. Id. at ¶53. He has various complaints about King—she denied him a family meeting upon his release, and refused to allow him to visit his daughter because the daughter allegedly lived too close to the girlfriend. Id. at ¶¶54-55. The bigger issue, though, is that the plaintiff says that while he was on a routine, legal errand on August 15, 2012, he accidentally saw the girlfriend; he says he reported this "shocking and chance sighting" to King, who had him taken into custody (without telling his brother-in-law, who was waiting outside). Id. at ¶¶58-61. The plaintiff—who was in Waukesha County at the time of the arrest—says that Boss ordered him to be transported to Shawano County, "with the complicity of Defendant King, Defendant Krause, and Defendant Losee." Id. at ¶66.

It is at this point that we reach the allegations that form the bases of the plaintiff's claims. He alleges that Boss "falsified official State documents" to say that he lived at the home that the girlfriend had taken from him (though he does not say when Boss did this, or what the "documents" were that she allegedly falsified. Id. at ¶68. He says that she falsely stated on the detention order dated August 20, 2012 that the plaintiff had violated a restraining order, when there was no restraining order. Id. at ¶69. He says that she falsely stated on the detention order that the plaintiff was on extended supervision in two cases when he wasn't. Id. at ¶70. He alleges that Krause signed the detention order, which he claims made her complicit to the false document. Id. at ¶71. He also says that, according to Boss's "DOC-90 Chronological Log," Losee had "signed off" on the order. Id. at ¶73.

7

The plaintiff says he sat in the Shawano County Jail for thirty days without documentation or a hearing, despite having asked Boss and Krause several times for his due process rights. Id. at ¶¶74-77. The plaintiff says he sat in the Waukesha and Shawano County Jails from August 15, 2012 through October 8, 2012 without due process. Id. at ¶80.

The plaintiff explains that in November 2012, he got a call from a different probation agent, telling him to turn himself in to the Shawano County Jail. Id. at ¶90. This person told him that his new agent was defendant Darling. Id. at ¶92. The plaintiff says that given the "very recent violations" of his rights by the defendants, he did not appear at the jail. Id. at ¶93. The plaintiff says that at some point, Darling "began revocation proceedings against Plaintiff on unrelated and resolved cases." Id. at ¶98. He claims that Krause "authorized documents falsifying cases to be named as eligible for re-incarceration and by Defendant Darling resurrected the 3 completely resolved" cases mentioned earlier in the complaint. Id. at ¶99. The plaintiff asserts that Darling recommended the maximum available re-incarceration sentence in each case. Id. at ¶101. The plaintiff ended up having to serve that time. Id. at ¶105. Finally, he says that Losee was "complicit to the false imprisonment and civil rights violations" because the regional DOC chief must approve any recommendation that exceeds the maximum for the category. Id. at ¶104.

The plaintiff's first cause of action says that Boss, Salamone-King, Krause and Losee "knowingly and with malice of intent falsified State of Wisconsin and DOC documents to fraudulently incarcerate" him. Id. at p. 11.

8

He says this caused him harm, and that the defendants violated his due process rights and subjected him to cruel and unusual punishment. His second cause of action says that Darling, Krause and Losee also falsified State of Wisconsin and DOC documents to fraudulently incarcerate him, forcing him to serve the "furthest extreme of reincarceration time" in violation of the Eighth Amendment. Id. at 11-12. The plaintiff included a couple of pages of argument regarding the statute of limitations. Id. at 11-14. For relief, he asks for an injunction prohibiting the defendants from interfering or causing him harm, over $250,000 in compensatory damages, costs and punitive damages. Id. at 14.

The court will dismiss Julia Krause and Eric Losee as defendants. At best, the plaintiff claims that Krause and Losee are liable because they supervised Boss, King and Darling, and thus were complicit in whatever Boss, King and Darling did. "Individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." Colbert v. City of Chi., 851 F.3d 649, 657 (7th Cir. 2017). "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." Horshaw v. Casper, 910 F.3d 1027, 1029 (7th Cir. 2018) (citations omitted). See also, Grant v. Schmidt, 787 F. App'x 345, 347 (7th Cir. 2019) ("Section 1983 does not allow actions against individuals merely for their status as the supervisors of others.") (citing Doe v. Purdue Univ., 928 F.3d 652, 664 (7th Cir. 2019)). Krause and Losee are not liable simply because they

supervised the plaintiff's probation officers, or signed off on documents those officers prepared. A sweeping, conclusory allegation that they must have known that the documents were false is not sufficient to state a claim.

The plaintiff refers several times in his amended complaint to "false imprisonment." It appears, however, that the plaintiff was revoked by a judicial official in each instance of which he complaints. That implies that judicial officers found probable cause to revoke him. "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." Mustafa v. City of Chi., 442 F.3d 544, 547 (7th Cir. 2006) (citation omitted). "This is so even where the defendant officers allegedly acted upon a malicious motive . . . ." Id. (citations omitted). If there was probable cause to believe that the plaintiff committed the violations for which he was revoked, he cannot prevail on a false imprisonment claim—even if Boss, King and Darling had malicious motives in seeking his revocation.

The plaintiff alleges that Boss and King violated his due process rights when they made false statements on various documents supporting his revocations. "Defendants have a due process right to be sentenced on the basis of accurate information." United States v. White, 868 F.3d 598, 603 (7th Cir. 2017) (citing United States v. Chatman, 805 F.3d 840, 843-44 (7th Cir. 2015)). And "[a]s an arm of the court, a probation officer is not supposed to take an adversarial role in a sentencing or revocation hearing . . . ." Id. (citing United States v. Peterson, 711 F.3d 770, 778 (7th Cir. 2018)). For the probation

officer's words or actions to rise to the level of "misinformation of constitutional magnitude," however, they must be materially untrue. United States v. Tucker, 404 U.S. 443, 447 (1972); see White, 868 F.3d at 604.

The plaintiff's allegations that Boss and King made materially false statements in seeking his revocation state sufficient facts to support a due process claim. Those claims may be time-barred. They may be Heck-barred. The defendants may enjoy some level of immunity. The court does not have sufficient facts to make those determinations at this stage. The plaintiff may proceed on his allegations in the amended complaint that Boss and King violated his due process rights.

The plaintiff alleges that Darling's alleged false statements subjected him to cruel and unusual punishment in violation of the Eighth Amendment, because he was sentenced to the maximum allowable re-incarceration time. The court first notes that it is unlikely that Darling—a probation officer—revoked the plaintiff, or that he sentenced him. Regardless of what allegations Darling may have made, someone else revoked the plaintiff and someone else sentenced him. More to the point, a lawsuit under 42 U.S.C. §1983 is not the appropriate way to challenge the length of a term of custody. "Any challenge to the duration of custody must proceed through a petition for a writ of habeas corpus." Mays v. Przybylski, No. 19-cv-103-pp, 2019 WL 1937860, at *2 (E.D. Wis. Apr. 30, 2019) (quoting Kendrick v. Hamblin, 606 F. App'x 835, 838 (7th Cir. 2015)). See also Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (holding that *habeas corpus* is the exclusive federal remedy for a person in custody

challenging the during of custody when the result he seeks is a speedier release). The plaintiff could have challenged the length of his sentence at his revocation hearing. He could have filed a petition for *habeas corpus* while he was in custody. His allegations that Darling's alleged false statements violated the Eighth Amendment are without merit. The court will dismiss Darling.

The court **GRANTS** the defendants' motion to clarify screening of the amended complaint. Dkt. No. 32.

The court **ORDERS** that Julia Krause, Eric J. Losee and James Darling are **DISMISSED** as defendants.

The court **ORDERS** that the plaintiff may proceed on a due process claim against defendants Boss and Salamone.

The court **ORDERS** that by the end of the day on March 27, 2020 the parties shall file an updated Rule 26(f) report.

Dated in Milwaukee, Wisconsin this 9th day of March, 2020.

                                          **BY THE COURT:**

                                          **HON. PAMELA PEPPER**
                                          **Chief United States District Judge**