UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL J. DETTLAFF,

        Plaintiff,

  v.

CARI BOSS, and
BETHANY SALAMONE (f/k/a Bethany King),

        Defendants.

Case No. 18-cv-1620-pp

---

**ORDER GRANTING DEFENDANTS' RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 35)**

---

On March 22, 2019, the defendants filed a motion for judgment on the pleadings. Dkt. No. 24. Because the court granted the plaintiff's request to the amend the complaint, it denied the defendants' motion without prejudice. Dkt. No. 30 at 2. The plaintiff filed his second amended complaint on June 7, 2019, dkt. no. 31, the defendants answered, dkt. no. 33, and the defendants then filed a renewed motion for judgment on the pleadings, dkt. no. 35. In the renewed motion, the defendants argue that the plaintiff's due process claim is barred by <u>Heck v. Humphrey</u> or otherwise must be dismissed as untimely. Dkt. No 35.

The plaintiff did not file a timely response and the court, noting that the plaintiff might not have received the motion, extended the deadline to June 13, 2020. Dkt. No. 39. The plaintiff asked for another extension, dkt. no. 40, which the court granted, dkt. no. 41. The plaintiff filed yet another motion for extension of time, indicating that this was his final request. Dkt. No. 42. The court granted that motion and extended the time for the plaintiff to respond to

1

the end of the day on July 18, 2020. Dkt. No. 43. The docket entries indicate that all three of the court's orders—entered by "text only"—were mailed to the plaintiff. Dkt. Nos. 39, 41, 43.

On July 28, 2020, the plaintiff called the clerk's office saying he never had received the text only orders. The clerk verified the plaintiff's address and again sent him the orders via the U.S. Postal Service. On August 6, 2020, the plaintiff filed an affidavit explaining his impediments to filing, asking for another extension. Dkt. Nos. 44, 45. The court held a status conference to discuss the reasons the plaintiff could not timely respond to the motion; at that September 28, 2020 telephone conference, the ordered the plaintiff to respond no later than October 30, 2020. Dkt. No. 48. The court finally received the plaintiff's opposition brief on October 30, 2020, dkt. no. 49, and the defendants have filed their reply, dkt. no. 51. Because the plaintiff did not file his complaint within the six-year limitation period, the court will grant the defendants' motion for judgment on the pleadings.

**I.      Defendant's Renewed motion for Judgment on the Pleadings**

　　A.　　Standard

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Pleadings 'include the complaint, the answer, and any written instruments attached as exhibits.'" Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc., 983 F.3d 307, 312 (7th Cir. 2020) (quoting N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 452 (7th Cir. 1998)). The standard is the same as a motion to dismiss; the only difference is timing. Id. at 313. As with a Rule 12(b) motion, the court will grant a Rule 12(c) motion only if it "appears beyond doubt that the plaintiff cannot prove any facts that

2

would support his claim for relief." N. Ind. Gun & Outdoor Shows, 163 F.3d at 452 (quoting Craigs, Inc. v. Gen. Elec. Capital Corp., 12 F.3d 686, 688 (7th Cir. 1993)). The moving party must demonstrate that there are no material issues of fact to be resolved. Id. The court views all facts and draws all inferences in the light most favorable to the non-moving party. Federated Mut. Ins., 983 F.3d at 313.

      B.     Amended Complaint

The plaintiff filed a civil rights complaint "alleging violations of the First, Eighth and Fourteenth Amendments of the United States Constitution, violations of Due Process of Law, obstruction to the Courts, as well as State charges for false imprisonment and misconduct and violations of Wisconsin Administrative Code." Dkt. No. 1 at 1. Magistrate Judge William E. Duffin recommended that this court dismiss the access-to-courts claim, speculated that the remaining due process claim might be barred by the statute of limitations, and allowed the plaintiff to file an amended complaint in fourteen days. Dkt. No. 3. When the plaintiff failed to file an amended complaint by the (extended) deadline this court had set, this court adopted Judge Duffin's recommendation to dismiss the access-to-courts claim and returned the case to Judge Duffin for further proceedings. Dkt. No. 8 at 4.

On April 17, 2019, the court held a scheduling conference, denied the plaintiff's motion for a *writ of mandamus*, denied without prejudice the defendants' motion for judgment on the pleadings, granted the plaintiff's motion to file an amended complaint and suspended all other deadlines. Dkt. No. 30. The plaintiff filed his amended complaint on June 7, 2019. Dkt. No. 31. The court screened that amended complaint, dismissed three defendants and allowed the plaintiff to proceed on his claim that defendants Boss and

3

Salamone-King violated his due process rights by falsifying documents to "fraudulently incarcerate" him. Dkt. No. 34 at 11.

In the order screening the amended complaint, the court laid out the plaintiff's allegations against Boss and Salamone-King. Id. at 5-8. The plaintiff alleged that in 2008, he was sentenced to a term of probation; he says that Boss was his supervising probation agent, that Julie Krause was Boss's supervisor, and that Eric Losee was the regional chief of the DOC. Dkt. No. 31 at ¶¶8-9. He said his on-again, off-again, live-in girlfriend took advantage of his emotional condition to pressure him into signing his home over to her. Id. at ¶¶9-20. He asserted that after the girlfriend obtained his home, she tried to get him locked up so that he couldn't sue her to regain title. Id. at ¶¶21-23.

Once the plaintiff was released from the sentences he'd received as a result of her alleged manipulation, the plaintiff contends that his ex-girlfriend "realized that she could use manipulations on his probation agent, Defendant Boss, and by false accusations seek [the plaintiff's] incarceration." Id. at ¶24. The plaintiff alleged that Boss encouraged the girlfriend to file a restraining order against the plaintiff "solely in order to prevent Plaintiff from protecting his property interest during the same period of the alleged false imprisonment," and that as a result of allegations by the girlfriend, Boss "incarcerated Plaintiff" on a probation violation. Id. at ¶¶26-27. He alleged that Boss and the girlfriend met and talked on the phone several times prior to his arrest. Id. at ¶29.

The plaintiff ended up being incarcerated, and he said that even though Boss "had been officially terminated as having lost any jurisdictional control over Plaintiff and his legal affairs due to imprisonment," she "kept tabs" on the plaintiff during his incarceration. Id. at ¶¶34-36. Basically, the plaintiff alleged that Boss continued to "meddle" in his life even after he was in prison,

including "meddling" in his relationship with his daughter and staying in close personal contact with the ex-girlfriend. Id. at ¶¶37-40. The plaintiff said he complained about this to Boss's supervisors, Krause and Losee, "who were complicit to the allegations of malfeasance and misconduct." Id. at ¶42.

Jumping ahead to 2012, the plaintiff said that he "was to be released" from custody on August 7, 2012, under the supervision of defendant Bethany Salamone-King. Id. at ¶53. He has various complaints about King—he said that she denied him a family meeting upon his release, and refused to allow him to visit his daughter because the daughter allegedly lived too close to the ex-girlfriend. Id. at ¶¶54-55. The bigger issue, though, is the plaintiff said that while he was on a routine, legal errand on August 15, 2012, he accidentally saw the girlfriend; he said he reported this "shocking and chance sighting" to King, who had him taken into custody (without telling his brother-in-law, who was waiting outside). Id. at ¶¶58-61. The plaintiff—who was in Waukesha County at the time of the arrest—said that Boss ordered him to be transported to Shawano County, "with the complicity of Defendant King, Defendant Krause, and Defendant Losee." Id. at ¶66.

The plaintiff alleged that Boss "falsified official State documents" to say that he lived at the home that the ex-girlfriend had taken from him (though he did not say when Boss did this, or identify the "documents" that she allegedly falsified. Id. at ¶68. He said that Boss falsely stated on the detention order dated August 20, 2012 that the plaintiff had violated a restraining order, when there was no restraining order. Id. at ¶69. He said that she falsely stated on the detention order that the plaintiff was on extended supervision in two cases when he wasn't. Id. at ¶70. He alleged that Krause signed the detention order, which he claimed made her complicit to the false document. Id. at ¶71. He also

5

said that, according to Boss's "DOC-90 Chronological Log," Losee had "signed off" on the order. Id. at ¶73.

The plaintiff said he sat in the Shawano County Jail for thirty days without documentation or a hearing, despite having asked Boss and Krause several times for his due process rights. Id. at ¶¶74-77. The plaintiff said he sat in the Waukesha and Shawano County Jails from August 15, 2012 through October 8, 2012 without due process. Id. at ¶80.

The plaintiff explained that in November 2012, he got a call from a different probation agent, telling him to turn himself in to the Shawano County Jail. Id. at ¶90. This person told him that his new agent was defendant Darling. Id. at ¶92. The plaintiff said that given the "very recent violations" of his rights by the defendants, he did not appear at the jail. Id. at ¶93. The plaintiff said that at some point after July of 2014, Darling "began revocation proceedings against Plaintiff on unrelated and resolved cases." Id. at ¶¶96, 98. He claimed that Krause "authorized documents falsifying cases to be named as eligible for re-incarceration and by Defendant Darling resurrected the 3 completely resolved" cases mentioned earlier in the complaint. Id. at ¶99. The plaintiff asserted that Darling recommended the maximum available re-incarceration sentence in each case. Id. at ¶101. The plaintiff ended up having to serve that time. Id. at ¶105. Finally, he said that Losee was "complicit to the false imprisonment and civil rights violations" because the regional DOC chief must approve any recommendation that exceeds the maximum for the category. Id. at ¶104.

The court allowed the plaintiff to proceed on his allegation that Boss and Salamone-King had "knowingly and with malice of intent falsified State of

6

Wisconsin and DOC documents to fraudulently incarcerate" him. Dkt. No. 34 at 8, 11.

C. Analysis

The defendants raise two arguments in their renewed motion. First, they assert that any claim that they falsified documents to keep the plaintiff incarcerated implies the invalidity of his conviction or sentence, which means that the plaintiff cannot recover damages under §1983 unless he can demonstrate that that conviction has been invalidated, vacated or expunged. Heck v. Humphrey, 512 U.S. 477, 486–87 (1994). Second, the defendants argue that the suit is barred by the statute of limitations because the claim(s) accrued when the plaintiff was released from custody on October 8, 2012.

1. *Heck v. Humphrey*

The plaintiff alleges that Boss and Salamone-King violated his due process rights by fabricating documents resulting in his being imprisoned between August 16, 2012 and October 8, 2012. The defendants argue that the plaintiff's due process claim is exactly the type of claim barred by Heck v. Humphrey, 512 U.S. 477, 486 (1994) (holding that civil tort actions generally are not appropriate vehicles for challenging the lawfulness of a criminal conviction or confinement). Dkt. No. 36 at 6. The Seventh Circuit divides due process claims into two categories for purposes of Heck: (1) category one claims arise from the constitutional violation itself, such as a failure to provide notice, and do not necessarily imply the invalidity of the conviction; and (2) category two claims that call into question the validity of the confinement. Id. (citing Brooks v. Ross, 578 F.3d 574, 579 (7th Cir. 2009)). According to the defendants, the plaintiff's claims fall within category two because he alleges that he was charged for violating a restraining order that did not exist, that his

7

detention was a sanction sought in two cases that aren't active and that he was held in a county with which he had no connection. Id.

The plaintiff responds that, in the absence of a crime, sanction or due process hearing, his claim cannot violate Heck. Dkt. No. 49 at 1-2. He insists that while the defendants incarcerated him under the guise of a sanction, there cannot be a sanction when he did not violate any rule. Id. at 3. According to the plaintiff, he simply reported the "chance sighting" of his ex-girlfriend to Salome-King. Id. at 2. He explains:

> [T]he record shows that it was only after being held for some 30 days in the Shawano Co. Jail with no explanation or charges (¶#74, Second Amended Complaint) that it was by my own written inquiry to jail staff did I find out why I was being held. It was then I was given a copy of 'DOC-212 Order to Detain', (**Exhibit 'C'**, Second Amended Complaint) which not only falsified the reason I was being held, as "Violation of Restraining Order" –when the defendants knew there was no such order, but also listed two completely resolved Shawano Co. cases, 08-CF-99, and 08-CF-186, which were irrelevant concurrent county jail cases with *no* ES or probation attached to them and had been completely resolved. Shawano Co. DOC Supervisor Krause (and proposed defendant) gave an authorization signature on the falsified document(s). Again, there are no corollaries to *Heck*.

Dkt. No. 49 at 4-5. The plaintiff filed for *certiorari* review in Marathon County Circuit Court, Case No. 16CV562, on the issues of the Shawano County Probation Agent and the "3 completely resolved cases." Id. at 8. At the same time, he admits that he took no action with respect to the extended supervision sanction, blaming it on "legal naivete" and his fear of retribution. Id. at 9, 13.

The documents attached to the second amended complaint establish that the defendants imposed an extended supervision sanction. The order to detain cites Case Nos. 07CF590, 08CF99 and 08CF186 and cites a violation of a restraining order. Dkt. No. 31-1 at 6. Krause, the Corrections Field Supervisor, signed a three-day extension on August 21, 2012. Id. On September 17, 2012,

Krause wrote to the plaintiff in the Shawano Co. Jail, explaining that he was being held in custody on an Extended Supervision Sanction, Wis. Stat. 302.113(8m)(b). Dkt. No. 1-1 at 6-7. She stated that the plaintiff had violated Rule #25, prohibiting any contact with his ex-girlfriend, and Krause clarified that the initial order to detain should have stated "violation of no contact rule" rather than "violation of a restraining order" (and indicating that the error occurred because the original order to detain was not completed by the plaintiff's assigned probation officer—Boss—but by a "cover agent.") Id.

Wisconsin law states that prisoners released to extended supervision remain in the Department of Correction's legal custody and that the DOC may take physical custody of the prisoner if it alleges that the prisoner has violated his conditions of extended supervision. Wis. Stat. §302.113(8m). If, in this case, the plaintiff were successful on his claim that he did not violate any rule or order giving rise to the sanction the defendants imposed, it would necessarily imply the invalidity of his imprisonment. In Heck, the Supreme Court explained that

> [i]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486–87.

In Easterling v. Siarnicki, 435 F. App'x. 524, 526 (7th Cir. 2011), the Seventh Circuit held that Heck barred a due process claim challenging a revocation of extended supervision. In Nelson v. Payne, No. 19-cv-1380, 2021 WL 229306 (E.D. Jan. 22, 2021), this court concluded that a plaintiff's §1983

9

claim was barred by Heck where the plaintiff alleged that he did not violate the conditions of supervision because the plaintiff was challenging the fact or duration of his confinement.

The court has only the documents the plaintiff chose to file with his pleadings. It bases its conclusion that the defendants imposed the term of imprisonment as a sanction for violation of the terms of extended supervision on those documents. The defendants have not cited a case applying Heck in an identical circumstance—where the plaintiff had been in detention pending investigation and/or as the result of a sanction, rather than under a sentence imposed after a revocation hearing or an initial conviction. But even if Heck did does not bar the plaintiff's suit, his claims are barred by the statute of limitations.

2. *Statute of Limitations*

Wisconsin's six-year statute of limitations applies to this case.[1] Wis. Stat. 893.53 (2016), amended by 2017 Wis. Act 235 (eff. April 5, 2018) (reducing applicable statute of limitations from six years to three years). The defendants argue the statute of limitations began running when the plaintiff knew or had reason to know of the injury which formed the basis of the action. Regains v. City of Chi., 918 F.3d 529, 533 (7th Cir. 2019), as amended on denial of reh'g (Apr. 17, 2019). The plaintiff's claim accrued when the plaintiff was released on October 8, 2012. See Manuel v. City of Joliet, Ill., 903 F.3d 667, 670 (7th Cir. 2018), cert. denied by City of Joliet, Ill. v. Manuel, 139 S. Ct. 2777 (2019). The plaintiff filed his federal complaint on October 18, 2018—six years and ten

---

[1] Wisconsin changed the limitation period for bringing §1983 claims from six years to three years effective April 5, 2018, but in 2012, when the events the plaintiff describes occurred, the limitations period was six years.

days later. The defendants argue the court must dismiss the case as barred by the statute of limitations.

The plaintiff alleges that the same course of conduct by a new agent, Jami Deschner, tolled the statute of limitations because she called him on November 15, 2012 and told him to turn himself into the Shawano Co. Jail. Dkt. Nos. 49 at 14; 31 at ¶90. The plaintiff says that he did not know why he was supposed to report and that he never did report. Id. The plaintiff says he did not learn of the documentary evidence found in the DOC-90 until the 2015 revocation hearing, dkt. no. 49 at 15, and admits that he had no contact with his substitute agent James Darling—whom the court has dismissed as a defendant and who the plaintiff alleges began revocation proceedings against him—until that time. Dkt. Nos. 49 at 15 ("Until 2015 I had little to no contact with Darling because I had refused to turn myself into the Shawano Co. Jail where I was sure to be subject to further corruption—knowing I had again committed no violation and not even being offered the courtesy of even being accused of anything."); 31 at ¶98.

In the second amended complaint, the plaintiff admits that he wrote jail staff on or about September 17, 2012 and was provided with the DOC-212 Order to detain. Dkt. No. 31 at ¶74. He also alleges that he immediately sent "several jail communiques to Defendant Krause regarding the falsified DOC-212 document whereas she acknowledged the fraud and stated it would be corrected but still allowed the alleged false imprisonment to continue." Id. at ¶75. He admits that he made several written requests to Boss and Krause "for his due process hearing rights and for complaint forms and appeal forms" but says that they ignored him. Id. at ¶76. The plaintiff says he "sent jail communiques to the Shawano Co. Sheriff's Dept. to make formal complaints

11

about his allegations of false imprisonment and no due process" but that no one would meet with him. Id. at ¶77. The sequence of these allegations shows that all of this occurred before the plaintiff's release on October 8, 2012. The communication from Krause explaining the sanction (which is attached to the original complaint) is dated September 17, 2012. Dkt. No. 1-1 at 6.

The plaintiff knew of his claim at the time of his release on October 8, 2012. He may have learned more about the extent of Boss's involvement in 2015, but he had known about, and accused the defendants of, the alleged falsification of documents and the alleged violations of his due process rights prior to and at the time of his release on October 8, 2012.

To the extent that that the plaintiff argues a continuing violation based on subsequent revocations by a different supervising agent, the argument fails under Seventh Circuit case law. The continuing violation doctrine applies when "a tort involves a continued repeated injury" and "the limitation period does not begin until the date of the last injury or when the tortious act ceased." Kovacs v. United States, 614 F.3d 666, 676 (7th Cir. 2010) (citing Rodrigue v. Olin Employees Credit Union, 406 F.3d 434, 442 (7th Cir.2005)). The plaintiff must link the time-barred act to acts that occurred within the limitations period. Id. (citing Filipovic v. K & R Express Syst., Inc., 176 F.3d 390, 396 (7th Cir.1999)). The doctrine does not apply to "a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." Id. (citing Rodrigue, 406 F.3d at 443; Filipovic, 176 F.3d at 396).

The allegations in the amended complaint identify separate, discrete acts. After the plaintiff was released from the extended supervision sanction, a new agent, Deschner, told him to turn himself in on November 15, 2012 and that he would be assigned to Darling. Dkt. No. 31 at 10. The plaintiff didn't

12

report as directed and, he says, "went on to live a law abiding, hardworking, productive and sober life." Dkt. No. 31 at ¶95. When the plaintiff's mother died in July of 2014—two years later—the plaintiff admits he relapsed and was charged with another OWI. Id. at ¶96. At that point, Darling began revocation proceedings. Id. at ¶98. The plaintiff has not connected the revocation hearings in 2014-15 (based on a new OWI charge) to the time-barred activities he asserts against Boss and Salome-King.[2]

The plaintiff also asks the court to consider his fear of imminent injury and duress "as a solid defense for extension of statute of limitations." Dkt. No. 49 at 19. The plaintiff points out that he had no problems during his subsequent incarceration(s) once Boss was removed from the picture. He uses President Trump's former attorney, Michael Cohn, to illustrate the basis for his fear: he says that Cohn was in a process of a writing a book when his probation agent "arbitrarily imposed a new rule prohibiting him from speaking to the press" and placed him back in prison. Id. at 19. From this, the plaintiff concludes that

> [t]here are times when courts must weigh the varied case circumstances for reasonableness and for what cost must be taken to achieve justice. Therein is a type of recipe for new case law to be made. The record of my experiences with the Defendants, especially Boss, is fraught with evidence that they instilled in me fear of imminent injury and placed me under duress for reprisal for filing a claim against them. Past performance is the predictor of future behavior. As such I have noted repeatedly my request for an injunction against the defendants for any acts of reprisal as I have experienced. Clearly, Darling's imposition of incarceration time for the 3 unrelated and resolved cases was at the behest of Boss, or some professional courtesy as he had no other cause to impose such

---

[2] This court already has dismissed Darling because Darling pursued a revocation following the OWI in 2014-15 but neither revoked nor sentenced the plaintiff; the plaintiff must challenge the subsequent revocations through a *habeas* proceeding before bringing the Eighth Amendment claim. Dkt. No. 34 at 11.

13

> malfeasant and illegal action against me. Same course of conduct and continuing injury/harm that produced the fear of further injury and placed me under duress for filing this claim. Valid cause to extend the statute of limitations.

Id. at 20.

The court has not found any case holding that the fear of retribution provides a basis for tolling the statute of limitations on a constitutional claim that the defendant knew about at the time of his release from prison. See Castro v. City of Chi., No. 07-cv-0931, 2013 WL 427109, *5 (N.D. Ill. Feb. 1, 2013) (finding no precedent that general fear of police reprisal is sufficient to equitably toll claims brought against officers). While there is a doctrine of equitable tolling, the plaintiff has not alleged sufficient facts to implicate that doctrine. Id. The plaintiff has not alleged that anyone lulled him into inaction or that anything beyond a general fear prevented him from filing within the six-year limitations period. As to the plaintiff's implied invitation to the court to make "new case law," the court declines.

## II. Conclusion

The court **GRANTS** the defendants' renewed motion for judgment on the pleadings. Dkt. No. 35.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 16th day of March, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

15

Case 2:18-cv-01620-PP   Filed 03/16/21   Page 15 of 15   Document 52